2014 WL 1571930 (U.S.) (Appellate Petition, Motion and Filing)
Supreme Court of the United States.

Kelechi AJOKU, Petitioner,
v.
UNITED STATES OF AMERICA.

No. 13-7264.
March 10, 2014.

On Petition for a Writ of Certiorari to the United States Court of Appeals for the Ninth Circuit

**Brief for the United States in Opposition**

Donald B. Verrilli, Jr., Solicitor General, Counsel of Record.

Mythili Raman, Acting Assistant Attorney General.

Sonja M. Ralston, Attorney, Department of Justice, Washington, D.C. 20530-0001, SupremeCtBriefs@usdoj.gov, (202) 514-2217.

*I  QUESTION PRESENTED

Whether 18 U.S.C. 1035, which prohibits "knowingly and willfully" making a materially false statement in a matter involving a health care benefit program, requires proof that the defendant was aware that his conduct was unlawful.

*1  OPINION BELOW

The opinion of the court of appeals (Pet. App. 1-14) is reported at 718 F.3d 882.

JURISDICTION

The judgment of the court of appeals was entered on June 3, 2013. A petition for rehearing and rehearing en banc was denied on August 12, 2013 (Pet. App. 15). The petition for a writ of certiorari was filed on November 5, 2013. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

*2  STATEMENT

Following a jury trial in the United States District Court for the Central District of California, petitioner was convicted of four counts of making false statements in a matter involving a health care benefit program, in violation of 18 U.S.C. 1035. Pet. App. 3. He was sentenced to 13 months of imprisonment, to be followed by three years of supervised release. 6/13/11 Judgment 2. The court of appeals affirmed. Pet. App. 1-14.

1. This case arose from a scheme to defraud the Medicare program through false billing for home medical supplies.

a. "Medicare is a federally funded health insurance program for the elderly and disabled." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 506 (1994). To be eligible to receive payments from Medicare, a medical equipment supplier must comply with

all applicable federal and state regulations. 42 U.S.C. 1395m(j)(1); see 2/23/11 Tr. 36-37. California, in turn, requires suppliers of prescription medical devices intended for home use to employ a pharmacist or licensed "exemptee" to supervise the storage and distribution of those devices. Cal. Health & Safety Code § 111656.4 (West 2012). To qualify as an exemptee, a person must have been trained in the proper handling of prescription devices and on the federal and state laws governing their distribution. *Id.* § 111656.4(a)(3).

***3** An exemptee generally must exercise exclusive control over a medical device supplier's prescription devices. Cal. Health & Safety Code § 111656.4(b), (e) and (f) (West 2012); see *id.* § 111656.5. The exemptee must maintain an inventory log, verify that devices are dispensed only to individuals with valid prescriptions, and ensure that the recipients of the devices are properly trained on how to use them. 2/16/11 Tr. 77-79, 219-223. Medicare separately requires suppliers of certain types of home medical equipment to provide training for beneficiaries who receive the equipment and to maintain documentation of that training in their files. *Id.* at 151; 2/17/11 Tr. 31-32.

b. Santos Medical Supply Company (Santos) was a Los Angeles-based company organized to defraud Medicare. Pet. App. 4-5. As relevant here, the fraud involved motorized wheelchairs and "enteral nutrition" supplies, which are liquid nutritional supplements and feeding syringes intended for patients who must be fed through feeding tubes because they cannot eat normally. 2/23/11 Tr. 31. Medicare covers these supplies only if they are medically necessary: a motorized wheelchair is eligible for reimbursement only if the patient is unable to walk, and enteral nutrition supplies are eligible for reimbursement only if the patient requires a feeding tube. 2/17/11 Tr. 35-38.

Santos's scheme began with the purchase of patient files from a medical clinic that was complicit in the fraud. 2/17/11 ***4** Tr. 116-119. The files contained prescriptions and certificates of medical necessity falsely representing that the patients needed motorized wheelchairs, enteral nutrition, or both. *Ibid.*; see *id.* at 104-107. Santos then delivered these supplies to patients who did not actually need them and billed Medicare for the ineligible deliveries, as well as for supplies that it never delivered at all. Pet. App. 5; 2/17/11 Tr. 127-130. For example, Santos billed Medicare for motorized wheelchairs when it actually delivered less-expensive power scooters. 2/17/11 Tr. 119-120. It also routinely billed for twice as much enteral nutrition formula as it actually delivered, and it billed for feeding syringes that patients never received. *Id.* at 118-119; 2/23/11 Tr. 129-130. Between 2004 and 2008, Santos submitted a total of $2.9 million in false Medicare claims and was paid approximately $1.8 million. Pet. App. 5.

c. In 2005, Santos learned that because feeding syringes are considered prescription devices under California law, it could not legally sell or bill for those syringes unless it hired an exemptee. 2/17/11 Tr. 132-133; 2/23/11 Tr. 18-19, 33-34. Santos approached petitioner, a registered nurse, about serving as its exemptee. Pet. App. 4. Petitioner was already working 70 to 80 hours per week at two other jobs, but he agreed to serve as Santos's exemptee because it was understood from the beginning that he would not actually supervise the company's ***5** distribution of prescription feeding syringes or perform the other functions of an exemptee. *Id.* at 4-5; 2/17/11 Tr. 133-135. Instead, petitioner was to be paid $400 per month to complete paperwork that would make it seem as if he was performing those functions, and to be on call to come to Santos's store and answer questions in the event of a government inspection. Pet. App. 4; 2/17/11 Tr. 134-136.

From 2005 until 2008, petitioner served as Santos's nominal exemptee. He apparently never learned that Santos was engaged in pervasive billing fraud. Pet. App. 5. But he made a variety of false statements to California and federal authorities that concealed the fact that he was not actually serving as Santos's exemptee. For example, when petitioner applied to become a licensed exemptee in 2005, he submitted a backdated employment contract falsely describing his responsibilities at Santos and an affidavit falsely stating that he would maintain exclusive control over Santos's prescription devices and would be present whenever those devices were dispensed. *Id.* at 4-5; see 2/16/11 Tr. 94-101; 2/17/11 Tr. 149-160. In 2005, petitioner was granted a license based on these representations. Pet. App. 4-5. In 2006, 2007, and 2008, he renewed his license. *Id.* at 5. Each time, his renewal application certified that he was performing the functions of an exemptee at Santos. *Ibid.* These certifications were false: petitioner visited Santos's store to ***6** pick up his checks and fill out paperwork, but he never performed the functions of an exemptee. *Ibid.*; see 2/17/11 Tr. 166-169, 210-212; 2/23/11 Tr. 99, 134-137. Petitioner also made false statements to agents

from the California Department of Public Health and the U.S. Department of Health and Human Services (HHS) when they interviewed him during inspections of Santos's facility. Pet. App. 5-6. In 2008, for example, petitioner falsely told HHS agents that "he had responsibility for storing and distributing [Santos's] prescription goods and training patients on their use." *Id.* at 6.

In 2005, shortly after he was hired, petitioner completed and signed several forms falsely representing that he had delivered motorized wheelchairs to specific patients and trained those patients in the use of the wheelchairs. Pet. App. 5. These forms were kept in Santos's records to document its purported compliance with Medicare's training requirements in the event of an audit or investigation. 2/17/11 Tr. 181-182. A Santos employee testified at trial that he explained to petitioner that he wanted petitioner to sign the forms to make it appear as if petitioner was actually working at Santos and training patients in the use of the devices the company distributed. *Id.* at 184. The patients never received the motorized wheelchairs described in petitioner's certifications, **\*7** and -- as petitioner admitted at trial -- he never performed any such training. Pet. App. 10; 2/24/11 Tr. 237-241.

2. A grand jury indicted petitioner and several other people involved in Santos's scheme on a variety of conspiracy, fraud, and false-statement charges. Pet. App. 6. After all of his co-defendants pleaded guilty, the government dropped the conspiracy and fraud charges against petitioner and proceeded to trial on four counts alleging that he made materially false statements in a matter involving a health care benefit program, in violation of 18 U.S.C. 1035(a)(1). Pet. App. 6. The first count alleged that petitioner falsified or concealed the fact that he was not actually serving as Santos's exemptee by making false statements in his license applications, supporting materials, and interviews with government investigators. 8/12/10 Second Superseding Indictment 16-19. The other three counts alleged that petitioner signed forms falsely certifying that three specific patients had received motorized wheelchairs and had been trained in their use. *Id.* at 20-21.

Section 1035 prohibits "knowingly and willfully" making a materially false statement or "falsif[ying], conceal [ing], or cover[ing] up by any trick, scheme, or device a material fact" in connection with the delivery of or payment for health care benefits, items, or services. 18 U.S.C. 1035(a). Consistent with Ninth Circuit precedent interpreting the identical language **\*8** of 18 U.S.C. 1001's prohibition on making false statements in matters within federal jurisdiction, the district court instructed the jury that it should find that petitioner acted "knowingly and willfully" within the meaning of Section 1035 if he acted "deliberately and with knowledge" that the charged statements were materially false or that he had falsified, concealed, or covered up a material fact. 2/25/11 Jury Instructions 18-19; see *United States v. Tatoyan,* 474 F.3d 1174, 1182 (9th Cir. 2007).

The jury convicted on all four counts. Pet. App. 6. The district court sentenced petitioner to four concurrent terms of 13 months of imprisonment, to be followed by four concurrent terms of three years of supervised release. 6/13/11 Judgment 2. The court also ordered him to pay $461,581.54 in restitution. *Id.* at 1.

3. The court of appeals affirmed. Pet. App. 1-14. As relevant here, the court held that the district court correctly instructed the jury that a defendant "knowingly and willfully" makes a false statement in violation of Section 1035 if he makes the statement "deliberately and with knowledge" of its falsity. *Id.* at 11-13. Petitioner argued that Section 1035's "willfully" element required the government to prove not only that he knew that his statements were false, but also that he "acted with knowledge that his conduct was unlawful." **\*9** *Bryan v. United States,* 524 U.S. 184, 193 (1998). The court of appeals rejected that argument, holding that "[i]n the context of false statement crimes" the term "willfully" "simply means 'deliberately and with knowledge,' and does not require knowledge of unlawfulness." Pet. App. 11 (quoting *Tatoyan,* 474 F.3d at 1182). In reaching that conclusion, the court relied on circuit precedent interpreting 18 U.S.C. 1001, which makes it a crime to "knowingly and willfully" make a materially false statement in a matter within the jurisdiction of the federal government. The court explained that the language of Section 1001 is "nearly identical" to Section 1035 and that the two provisions serve similar purposes. Pet. App. 12. The court therefore adopted the interpretation of "willfully" reflected in its cases interpreting Section 1001, which hold that that the term "means no more than that the forbidden act is done deliberately and with knowledge.' " *Id.* at 13 (quoting *United States v. Carrier,* 654 F.2d 559, 561 (9th Cir. 1981), and *Hirsch v. INS,* 308 F.2d 562, 567 (9th Cir. 1962)).

**ARGUMENT**

Petitioner contends (Pet. 4-13) that Section 1035's "willfully" element requires proof that the defendant knew that his false statement was unlawful. The government took a different position in the courts below, relying on Ninth Circuit precedent interpreting the identical language in Section 1001. **\*10** Upon further consideration, however, the government now agrees that the correct interpretation of "willfully" in Section 1035 is the one articulated in *Bryan v. United States,* 524 U.S. 184 (1998). To find that a defendant "willfully" made a false statement in violation of Section 1035, a jury must conclude "that he acted with knowledge that his conduct was unlawful." *Id.* at 193. The same interpretation should apply to 18 U.S.C. 1001's materially identical prohibition on "knowingly and willfully" making a false statement in a matter within the jurisdiction of the federal government.

The court of appeals' contrary conclusion in this case does not squarely conflict with any appellate decision interpreting Section 1035. The courts of appeals are divided, however, on the interpretation of "willfully" in the context of Section 1001. Accordingly, this Court's review of the question presented may ultimately be warranted in an appropriate case. But review would be premature at this point because no court of appeals has had the opportunity to consider the issue in light of the government's current view. Moreover, further review is unwarranted in this case because any error in the district court's instructions was harmless. The petition should therefore be denied. [1]

[1] The question presented in this case is also presented in *Russell v. United States,* petition for cert, pending, No. 13-7357 (filed Nov. 11, 2013). The government is filing its brief in opposition in *Russell* concurrently with this brief and is providing a copy of this brief to counsel for the petitioner in *Russell*. A third pending petition raises a different question about the degree of mens rea required by Section 1035: whether the government must prove that the defendant acted with specific intent to deceive. See *Natale v. United States,* petition for cert. pending, No. 13-744 (filed Dec. 20, 2013). The government's response in *Natale* is due on March 24, 2014.

**\*11** 1. The court of appeals correctly concluded that "willfully" should be given the same meaning in Section 1001 and Section 1035. Upon further consideration, however, the government has concluded that the "willfully" element of these provisions requires proof that the defendant knew his conduct was unlawful.

a. As the court of appeals observed, Section 1035 is a close cousin of Section 1001. Pet. App. 12. Section 1001 applies to statements made "in any matter within the [federal government's] jurisdiction," and Section 1035 applies to statements made "in connection with the delivery of or payment for" health care benefits or services "in any matter involving a health care benefit program." Both statutes use essentially identical language to prohibit "knowingly and willfully" making false statements. Compare 18 U.S.C. 1001, with 18 U.S:C. 1035. Indeed, the text of Section 1035 appears to have been drawn from Section 1001. [2] Accordingly, the court of appeals correctly **\*12** concluded that "knowingly and willfully" should be given the same meaning in both statutes. Cf. *Pasquantino v. United States,* 544 U.S. 349, 355 n.2 (2005) (collecting cases adopting consistent interpretations of "identical language in the wire and mail fraud statutes").

[2] Section 1035 was enacted in 1996 and its relevant text is essentially identical to the version of Section 1001 that was then in effect. See Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, § 244, 110 Stat. 2017; see also 18 U.S.C. 1001 (1994). The legislative history of Section 1035 confirms that the statute was drafted against the backdrop of Section 1001. See H.R. Conf. Rep. No. 736, 104th Cong., 2d Sess. 257 (1996).

b. This Court has never addressed the proper interpretation of "willfully" in Sections 1001 and 1035. See *Brogan v. United States,* 522 U.S. 398, 416 (1998) (Ginsburg, J., concurring in judgment) (noting that the meaning of the term in the context of Section 1001 is an open question). In general, however, the Court has held that when the word "willfully" is used "in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' " *Bryan,* 524 U.S. at 191. "In other words, in order to establish a 'willful' violation of a [criminal] statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.' " *Id.* at 191-192 (quoting *Ratzlaf v. United States,* 510 U.S. 135, 137 (1994)). [3] To carry this burden, the government need not show **\*13** that the defendant knew about the specific provision he is charged with violating

or prove that he "disregard[ed] *** a known legal obligation." *Id.* at 198-199. It is sufficient if the defendant was aware that the charged conduct was, in a general sense, in violation of the law. See *id.* at 189-191, 193-196. [4]

[3]  See also, *e.g.*, *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57 n.9 (2007); *Screws v. United States,* 325 U.S. 91, 101 (1945) (plurality opinion); *United States v. Murdock,* 290 U.S. 389, 394 (1933); *Potter v. United States,* 155 U.S. 438, 446 (1894); *Felton v. United States,* 96 U.S. 699, 702 (1877).

[4]  The Court has adopted a more stringent interpretation of "willfully" in the context of some tax statutes, holding that "the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating." *Bryan,* 524 U.S. at 194; see also *Ratzlaf,* 510 U.S. at 138 (adopting a similar rule in the context of a prohibition on structuring currency transactions). But the Court has applied this more demanding construction only in the context of "highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct." *Bryan,* 524 U.S. at 194-195. That heightened showing to establish that a defendant acted "willfully" has no application to the non-technical prohibitions on false statements in Sections 1001 and 1035. See *id.* at 194-196.

Although Ninth Circuit precedent supported the position the government took below, the government now agrees that the general criminal-law interpretation of "willfully" articulated in *Bryan* should govern in the context of Sections 1001 and 1035. The court of appeals reached a contrary conclusion because "willfully" is "a word of many meanings whose construction is often dependent on the context in which it appears." Pet. App. 11 (quoting *Bryan,* 524 U.S. at 191) (internal quotation marks **\*14** omitted). The court of appeals correctly noted that in some circumstances, the term "simply means 'deliberately and with knowledge.' " *Ibid.* But that interpretation ordinarily applies only in the context of civil statutes. "It is different in the criminal law," where this Court has "consistently held that a defendant cannot [act willfully] unless he 'acted with knowledge that his conduct was unlawful.' " *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57 n.9 (2007) (quoting *Bryan,* 524 U.S. at 193); accord *United States v. Murdock,* 290 U.S. 389, 394 (1933).

In the context of Sections 1001 and 1035, moreover, interpreting "willfully" to mean "deliberately and with knowledge" would deprive that term of independent effect. Both statutes separately require that the defendant act "knowingly," which requires "proof of knowledge of the facts that constitute the offense." *Bryan,* 524 U.S. at 193. It is difficult to conceive of a circumstance in which a defendant could "knowingly" make a false statement without also making that statement "deliberately." See 2 Leonard B. Sand et al., *Modern Federal Jury Instructions* 36-18 (2013) (Sand) (rejecting the "deliberately" interpretation of "willfully" in Section 1001 because it is "indistinguishable from the definition of knowingly"). And this Court has cautioned against interpreting a criminal statute in a way that would "treat [] [a] 'willfulness' requirement essentially as surplusage." **\*15** *Ratzlaf,* 510 U.S. at 140. The need to give the term "willfully" some independent effect thus further confirms that, in the context of Sections 1001 and 1035, it should be interpreted to require proof that the defendant knew his conduct was unlawful. But it remains true that "willfully" is "a word of many meanings." *Bryan,* 524 U.S. at 191. Context and history may support a different interpretation of that term in other criminal statutes not at issue here. [5]

[5]  For example, this Court held that a statute making it a crime to "willfully and knowingly" use a passport obtained by means of a false statement required only proof that the passport was used "deliberately and with knowledge" that it had been obtained under false pretenses. *Browder v. United States,* 312 U.S. 335, 341 (1941). The Court noted that the statute was focused primarily on "the basic wrong" of "the securing of a passport by a false statement," and appeared to conclude that this initial act of wrongdoing was sufficient to render any subsequent use of that passport "willful." *Ibid.* And in some other contexts, lower courts have interpreted "willfully" to require only proof that the defendant "knew that her conduct was *wrongful*" rather than proof that she "knew her conduct was *unlawful.*" *United States v. Robertson,* 709 F.3d 741, 745 (8th Cir. 2013) (brackets omitted) (interpreting 18 U.S.C. 1163's prohibition on "willfully misappl[ying]" tribal funds).

2. Petitioner contends (Pet. 8-11) that the courts of appeals are divided over the proper interpretation of "willfully" in Sections 1001 and 1035. No square conflict exists on the meaning of "willfully" under Section 1035, but the courts of appeals have reached differing conclusions about the meaning of the term in Section 1001.

*16  a. Aside from the decision below, only one court of appeals has squarely considered the question whether Section 1035's "willfully" element requires proof that the defendant knew that his false statement was unlawful. In *United States v. Russell,* 728 F.3d 23 (1st Cir.), petition for cert, pending, No. 13-7357 (filed Nov. 11, 2013), the First Circuit followed the court of appeals' decision in this case and concluded that the "willfully" element "does not necessarily require knowledge of illegality" and instead is satisfied if the government proves "that the defendant's statements were false and that the defendant knew they were false." *Id.* at 32-33.

Petitioner contends (Pet. 8-9) that the Fifth Circuit adopted a different interpretation in *United States v. Jones,* 664 F.3d 966 (2011), cert, denied, 132 S. Ct. 2728 (2012). In that case, however, the court held only that a new trial was required where the verdict form instructed the jury that it could convict if it found that the defendant "knew, or should have known" that the charged statements were false. *Id.* at 981. The court appeared to assume that the *Bryan* definition of "willfully" applies in the context of Section 1035. See ibid. (citing *Bryan,* 524 U.S. at 191-192, and referring to the dispute at trial over whether the defendant "had the requisite knowledge that his [conduct] was illegal"). But the court had no occasion to resolve the meaning of "willfully" or to analyze the question  *17  presented here because the verdict form required the jury to find only that the defendant "knew, or should have known" that the charged statements were false -- a standard that is inadequate under any interpretation of "knowingly and willfully." *Ibid.* [6]

[6] Two other Fifth Circuit decisions also appear to have assumed, without squarely holding, that Section 1035 requires proof that the defendant knew that his false statements were unlawful. See *United States v. Delgado,* 668 F.3d 219, 225-226 (2012); *United States v. Crow,* 504 Fed. TAppx. 285, 287 (2012), cert denied, 133 S. Ct. 2014 (2013).

b. Although no square conflict exists on the meaning of "willfully" in the context of Section 1035, the courts of appeals are divided on the meaning of the term in Section 1001. Six circuits -- the First, Fourth, Fifth, Eighth, Ninth, and Tenth -- have held that the government need only prove that the defendant deliberately made the statement with knowledge that it was false. See *United States v. Gonsalves,* 435 F.3d 64, 72 (1st Cir. 2006); *United States v. Daughtry,* 48 F.3d 829, 831-832 (4th Cir.), vacated on other grounds, 516 U.S. 984 (1995), reinstated in relevant part, 91 F.3d 675 (1996); *United States v. Hopkins,* 916 F.2d 207, 214 (5th Cir. 1990); *United States v. Hildebrandt,* 961 F.2d 116, 118-119 (8th Cir.), cert, denied, 506 U.S. 878 (1992);  *18 *United States v. Tatoyan,* 474 F.3d 1174, 1182 (9th Cir. 2007); *Walker v. United States,* 192 F.2d 47, 49 (10th Cir. 1951). [7]

[7] The D.C. Circuit has assumed that no proof of knowledge of illegality is required, but has not squarely addressed the issue. See *United States v. Hsia,* 176 F.3d 517, 522 n.3 (1999), cert, denied, 528 U.S. 1136 (2000).

The Third Circuit, in contrast, has held that the "willfully" element in Section 1001 requires proof that the defendant had "knowledge of the general unlawfulness of the conduct at issue," *United States v. Starnes,* 583 F.3d 196, 211-212 (2009), and the Second Circuit seems to have adopted the same view, see *United States v. Bakhtiari,* 913 F.2d 1053, 1060 n.1 (1990) (citing approvingly Judge Sand's "bad purpose" instruction), cert, denied, 499 U.S. 924 (1991); see also *United States v. Whab,* 355 F.3d 155, 160 (2d Cir.) (finding no plain error in the district court's failure to require more specific knowledge of illegality than that the defendant was aware of "the generally unlawful nature of his actions"), cert, denied, 541 U.S. 1004 (2004). Judge Kavanaugh has likewise concluded that the government must present "proof that the defendant knew that making the false statement would be a crime." *United States v. Moore,* 612 F.3d 698, 703 (D.C. Cir. 2010) (Kavanaugh, J., concurring); see also Sand 36-18 (endorsing the same interpretation of Section 1001). [8]

[8] The Seventh Circuit has noted that its pattern jury instructions require proof of knowledge of illegality, see *United States v. Ranum,* 96 F.3d 1020, 1028-1029 (7th Cir. 1996), cert, denied, 519 U.S. 1094 (1997), but has recognized that the issue remains an open question, see *United States v. Brandt,* 546 F.3d 912, 916 (7th Cir. 2008).

*19  3. In light of the disagreement among the courts of appeals, this Court's review of the proper interpretation of "willfully" in Sections 1001 and 1035 may ultimately be warranted in an appropriate case. But plenary review would be premature at this

point because no court of appeals has had an opportunity to consider the question in light of the government's current views. Some or all of the courts that have interpreted "knowingly and willfully" to mean "deliberately and with knowledge" may reconsider that conclusion in light of the government's concession that a greater showing is required -- particularly because it appears that some of those courts have not considered the issue since this Court's decision in *Bryan*.

4. In some cases in which the government no longer endorsed a view that prevailed in the courts below, this Court has granted the petition, vacated the judgment below, and remanded for further consideration in light of the government's changed position. See, *e.g.*, *Breland v. United States,* 132 S. Ct. 1096 (2012). But such a remand is not necessary in this case because any error in the district court's instructions was harmless.

**\*20** It is well settled that an error in the jury instructions describing the elements of an offense can be harmless. See *Neder v. United States,* 527 U.S. 1, 8-15 (1999). Such an instructional error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* at 18. Although petitioner argued at trial that he did not knowingly make any false statements, the jury necessarily rejected that argument and concluded that the charged statements were false and that petitioner knew they were false. See Pet. App. 9-10. Given that finding, it is clear beyond a reasonable doubt that a rational jury also would have found that petitioner was aware that his false statements violated the law.

The harmlessness of any instructional error is particularly clear with respect to the first count of conviction, which rests on petitioner's false statements to state and federal authorities concealing the fact that he was not actually serving as an exemptee for Santos. Several of those false statements were made in petitioner's initial exemptee application and subsequent renewal applications submitted to a state regulatory agency. Pet. App. 4-6. In each of those applications, petitioner signed a certification stating: "I hereby certify under penalty of perjury under the laws of the state of California to *** the truth and accura[cy] of all **\*21** statements, answers and representations made in this application, including all supplementary *** statements." 2/16/11 Tr. 92-93; see *id.* at 102-104; 2/24/11 Tr. 190-191, 232-233. These certifications covered not only petitioner's statements in the applications themselves, but also the supplemental materials he submitted, including the employment contract and affidavit falsely describing his responsibilities at Santos. 2/16/11 Tr. 101. And because "the certifications themselves stated that [false] submissions were unlawful," petitioner necessarily "knew that he was committing an unlawful act that exposed him to criminal liability." *United States v. Awad,* 551 F.3d 930, 940 (9th Cir.), cert, denied, 556 U.S. 1269 (2009). As the Ninth Circuit recognized in an analogous case, the omission of an instruction requiring the jury to find that petitioner knew his conduct was unlawful was thus harmless: in light of petitioner's own certifications, a rational jury necessarily would have found that he had the requisite knowledge. See *ibid.* (holding that an erroneous instruction on the meaning of "willfully" in the context of 18 U.S.C. 1347's prohibition on health care fraud was harmless because the defendant had signed forms stating that the submission of " 'any false, incomplete, or misleading information' could subject him to criminal liability"); see also *United States v. Berry,* 683 F.3d 1015, 1021 (9th Cir. 2012) (finding an improper instruction **\*22** on "willfully" to be harmless error where the defendant "was notified" of his legal obligations).

Moreover, petitioner testified at trial that he "understood" that the government would be relying on the materials he submitted and that he recognized that those materials "had to be truthful and accurate." 2/24/11 Tr. 200-201. He further conceded that he knew "that it would be wrong to submit false documents to the Government" and "understood [that] it's wrong to fill out false paperwork." *Id.* at 201-202. And, more broadly, petitioner knew that he was hired because the law required Santos to employ an exemptee, *id.* at 91, 184-185; knew that he was not actually performing the functions of an exemptee, Pet. App. 5-6; and yet falsely claimed that he was serving that function in numerous oral and written statements made over several years, including a signed affidavit, several signed certifications, and two in-person interviews with government investigators, *id.* at 4-6. This scheme was "so bold and simple that no reasonable person could have thought it lawful." *Awad,* 551 F.3d at 941. Having found that petitioner's statements were false and that he knew they were false, therefore, a rational jury necessarily would have concluded that he also knew they were unlawful.

The same is true of the remaining counts of conviction, which were based on petitioner's completion of forms falsely **\*23** certifying "that he was the person who had delivered motorized wheelchairs to *** three named individuals and had trained

them on the use of the wheelchairs." Pet. App. 10. Another Santos employee testified that he explained to petitioner that he wanted petitioner to complete and sign the forms "in case Medicare made an audit" and "requested documents [showing] that [Santos] had an exemptee and that he was active in the *** operations of the business." 2/17/11 Tr. 184. The false statements in these forms were thus part of the same overall scheme in which petitioner falsely claimed to be serving as Santos's exemptee in an effort to deceive the government. And, as petitioner conceded in connection with other false documents, he "understood [that] it's wrong to fill out false paperwork." 2/24/11 Tr. 201-202. Accordingly, as to these counts too, a rational jury necessarily would have concluded that petitioner understood that his false statements were unlawful.

## *24 CONCLUSION

The petition for a writ of certiorari should be denied. Respectfully submitted.

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.