UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA,**

            Plaintiff,

v.                                          Case No.   2:14-cr-00118

**GARY K. GRIFFITH,**

            Defendant

## DEFENDANT GARY GRIFFITH'S SENTENCING MEMORANDUM

Defendant, by counsel, submits this Sentencing Memorandum to discuss the factors the Court should consider in determining his sentence. As the Court is aware, the following cases establish, among other principles, that the sentencing court must consider all of the factors set forth in 18 U.S.C. § 3553(a) when determining what sentence is sufficient, but not greater than necessary, to satisfy § 3553(a): *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Nelson v. United States*, 555 U.S. 350 (2009); *Spears v. United States*, 555 U.S. 261 (2009); *Kimbrough v. United States*, 552 U.S. 85 (2007); and *Rita v. United States*, 551 U.S. 338 (2007).

### The Defendant has not Objected to the Presentence Investigation Report[1]

The Defendant resolved his questions and differences with the draft PSR and has therefore not filed objections. *See* the "Objections" section of the PSR. The particular wording of the draft PSR caused counsel some concern that the probation officer might be considering

---

[1] "PSR"

allegations against Mr. Griffith by defendants in some of the related cases relevant conduct. However, after consultation with the probation officer, counsel concluded that such information was instead included in the PSR to give the Court a complete account of claims made by defendants in related cases.

A.U.S.A. Thomas has told the undersigned that the government's charging decision was based on information provided by Defendant Runyon (No. 2-14-cr-00117). The undersigned believes that Runyon provided most if not all of such information. Mr. Runyon is the defendant with the most comprehensive knowledge of the transactions at the Mountain Laurel Mine that led to all of these prosecutions. In the most material respects, Mr. Runyon's knowledge is first-hand. On the other hand, much of the alleged conduct described in the PSR, which is based on accusations by other defendants against Mr. Griffith, is uncorroborated. A.U.S.A. Thomas confirmed to the undersigned and to Probation Officer Jones that Mr. Griffith was charged based on what the government considered his readily provable conduct at the time of his plea agreement. The government provided redacted interview summaries from related cases to the Probation Department, on which the undersigned was copied. That redacted material is the apparent source of the additional conduct, allegedly by Mr. Griffith, included in the PSR.

Ultimately, the PSR concurred with the specific offense conduct, and the Sentencing Guideline calculations, in the parties' plea agreement.

## APPLICATION OF THE STATUTORY SENTENCING FACTORS TO THE FACTS OF THE CASE

### A. The Nature and Circumstances of the Offense

Mr. Griffith's position on the nature and circumstances of the offense is demonstrated by

the following:

— He has not challenged the offense level calculated in the PSR, which is the same as that in the plea agreement;

— He has not challenged the amount of loss calculated in the PSR ($250,000)[2] for the application of USSG § 2B 1.1 (b)(1)(G); and

— He has not challenged the recommended enhancements for his role ("position of trust") in the offense under USSG § 3Bl.3.

Soon after retaining counsel in this case, Mr. Griffith agreed to enter into a plea agreement with the government. He signed the plea agreement that the government initially presented, during his first meeting with the undersigned to discuss it. In his debriefing by the government, Mr. Griffith was forthcoming and not self-serving. He volunteered information, including information outside the scope of his and the related Arch Coal cases. Mr. Griffith has taken responsibility for his offense conduct, and his underlying conduct.

### B. The Defendant's History and Characteristics

Gary Griffith was born in October 1951 and will be 63 years old on October 15. He worked as an underground coal miner beginning in the 1970s. His intelligence and motivation led him to acquire skills for more highly-skilled work. He became a master electrician and was responsible for the design and construction of the electrical system at the Mountain Laurel Mine. His technical skill and knowledge, and his natural leadership qualities, led him to the

---

[2] At the time Mr. Griffith signed his plea agreement, the undersigned was not aware that in the government's view, Defendant Runyon had use immunity with respect to the shuttle-car scheme. Counsel assumed that the $250,000 involved in the scheme, which was split equally between Mr. Griffith and Mr. Runyon, would be a matter of joint and several liability. However, the government's position is that Mr. Runyon's immunity bars it from agreeing that Defendant Runyon should be accountable for any part of the $250,000. Mr. Griffith has not challenged the government's position and will comply (assuming the Court so orders) with the requirement in his plea agreement that he make restitution for the full amount.

maintenance supervisor position he occupied during the period involved in this case.

Mr. Griffith has been married and divorced twice and is currently single. He had two daughters by his first wife. His daughter Emma Kay died at the age of 28 in circumstances that are described briefly in the PSR (¶ 93). The loss of Emma Kay was devastating to Gary. It is the undersigned's observation, and Gary's account, that he has never recovered from her death, which is ever-present for him.

Mr. Griffith has two grandsons by his other daughter, Freda. Gary has taken on a great share of the financial responsibility for his grandsons. The older grandson recently enrolled at Fairmont State. Gary has taken responsibility for financing the boy's education. He has a strong sense of commitment and responsibility to his family and to his grandchildren.

<u>Health and Medical Situation</u>

In counsel's view Mr. Griffith's serious heart condition is his pre-eminent characteristic bearing on the sentencing decision, and specifically on the question of a custodial sentence. Gary's medical history is detailed in the PSR and in a letter by his cardiologist, Scott E. Miller, M.D. Dr. Miller's letter also details his assessment of Gary's health as it might be affected by a custodial sentence.

Gary's heart disease left him unable to work and has defined much of his life since his open-heart surgery in 1999. The bypass surgery temporarily alleviated his coronary symptoms, but the disease gradually took hold again. When his symptoms returned, Gary consulted with physicians at the Cleveland Clinic. It is Gary's understanding from the physicians who have examined him that he will require a second bypass operation. He has been told that two bypass surgeries are the most that can be performed. For that reason, he has postponed a second surgery,

despite having symptoms that lead him to believe he needs it. The doctors at the Cleveland Clinic advised Gary to have only medical treatment for as long as possible, postponing a second heart surgery to the greatest extent feasible.

Throughout the undersigned's representation of Mr. Griffith, it has been clear that he has angina-type pain on a regular basis. This limits his ability to exercise, which tends to bring on such pain. Counsel considers that these circumstances combine, along with his daughter's death described above, to make him depressed, which Gary also reported during his PSR interview. He is not the sort of person to seek psychiatric or psychological counseling or treatment. His cardiologist has prescribed medication for depression, but Gary reports that he has never used it. These facts are also described in the PSR.

As far as counsel can determine, Mr. Griffith's conduct involved in this case is not consistent with the personal characteristics that have characterized his behavior, and his life, in all other respects. This assessment is supported by the letters to the Court on Gary's behalf, in connection with his sentencing.

### C. The Need for the Sentence to Promote Certain Statutory Objectives

**1. To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.**

The Defendant's conviction and payment of restitution, together with a sentence of probation and community service, would adequately reflect the seriousness of the crime, and would serve to promote respect for the law, and the need for just punishment. Payment of the full amount of restitution agreed to, or even of the amount the Defendant actually realized, will be experienced, and perceived by others, as significant punishment. Naturally a sentence of

confinement would also serve the statutory objectives listed above. In this defendant's case, however, there is a substantial likelihood that custody will seriously impact the Defendant's health, and likely shorten his life. Defendant urges the Court to consider those possible consequences in fashioning a just sentence.

2. **To afford adequate deterrence to criminal conduct.**

*Specific deterrence*: Mr. Griffith has no prior criminal record, suggesting that his motivation to commit this crime was specific to the circumstances in which he found himself in his employment with Arch Coal. He is extremely unlikely to find himself in a similar employment position in the future. This, together with the limitations Mr. Griffith's health places on him, suggest that the negative consequences of a non-custodial sentence, discussed above, will be a sufficient deterrent.

*General deterrence.* Persons in positions such as that which Mr. Griffith occupied at Arch are likely to be sufficiently deterred from committing a similar crime by the consequences discussed above, and by the consequences of the other sentences the Court has and will impose in these cases. If that is so, the law requires that Mr. Griffith's sentence be no greater than necessary to achieve that objective.

3. **To protect the public from further crimes of the defendant.**

The circumstances in which Mr. Griffith committed this offense are unlikely to recur. In addition, the record does not support the conclusion that Mr. Griffith has any general inclination to offend. To the contrary, the record suggests that the circumstances of this offense were peculiar to Mr. Griffith's employment by Arch, and to the opportunity presented. A non-custodial sentence would be sufficient to protect the public, but the record does not really

indicate that Mr. Griffith poses a risk to the public.

4. **To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Counsel respectfully suggests that the most effective manner in which the Defendant is likely to receive any such training, care, and particularly such treatment, is in a non-custodial setting.

### D. The Kinds of Sentences Available

A sentence of probation alone is not prohibited by statute; in fact it is specifically authorized. 18 U.S.C. § 3583(b)(2). The Guidelines' denial of such a sentence, when the guideline calculations result in a sentencing range in Zone D of the Sentencing Table, is entitled to no presumption of superiority to the Congressional enactment, much less to the sound discretion of the trial judge. "In determining the merits of these arguments [by the prosecution and the defense], the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. *Booker*, 543 U.S., at 259–260, 125 S.Ct. 738." *Rita, supra*, at 551 U.S. 351.

Defendant submits that a sentence of probation in this case would most effectively implement the purposes of § 3553(a).

*__The Court Should Consider the Alternative of Community Service for this Defendant.__*

Gary Griffith is particularly suited by personality, temperament, and experience to be a mentor to others. He is proud of the respect he engendered in the employees who worked under his supervision, and he enjoys passing along his skills. He has made a regular practice of helping those in need, whether family or not. With the right match of service to his skills, and with deference to the

physical limitations imposed by his medical condition, undersigned counsel submits that Griffith could perform community service effectively, and he would be self-motivated in doing so, rather than treating it as an obligation.

### E.  The Sentencing Range Established by the Sentencing Commission

The Guideline range in this case establishes the seriousness of the offense.  However, the guideline range must be considered in the context of the factors, facts, and circumstances discussed elsewhere in this Memorandum.  *See* the discussion immediately above.

### F.  The Need to Avoid Unwarranted Disparities

The language of this objective establishes its limits.  This objective seeks to avoid <u>unwarranted</u> discrepancies.  Obviously the Court should not entirely disregard congruity in sentencing.  However, to the extent the sentence in this case might be viewed as disparate, the case presents a legitimate basis for such disparity, in light of the Defendant's health, as well as his positive characteristics discussed above.

### CONCLUSION

For the reasons set out above, Defendant Gary Griffith asks the Court to give its most serious consideration to a sentence that does not include custody.

Respectfully submitted October 14, 2014.

**GARY K. GRIFFITH,**
By Counsel

_____
Thomas J. Gillooly
Attorney at Law
P.O. Box 3024
Charleston, WV 25331
304 546-7228
fax 720-2276
tgillooly@gmail.com
*Counsel for Defendant Griffith*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2014, I filed the foregoing document electronically, using the CM/ECF system, which will send notification of the filing to:

    Meredith George Thomas
    Assistant United States Attorney

_____
Thomas J. Gillooly