IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

**v.**                                               CRIMINAL NO. 2:14-00118

**GARY K. GRIFFITH**

## MEMORANDUM OF THE UNITED STATES REGARDING THE CALCULATION OF THE GUIDELINES

Comes now Meredith George Thomas, Assistant United States Attorney, and respectfully submits this memorandum on the sentencing guidelines applicable to the charge of 18 U.S.C. § 1001(a)(2) to which defendant Gary Griffith pled guilty. The Court raised a concern with the applicable guideline range on March 10, 2015. See ECF 24. This memorandum is now submitted by order of the Court. Id.

**I.  Background**

On May 5, 2014, Defendant Gary Griffith signed a plea agreement with the United States, wherein Griffith agreed to plead guilty to 18 U.S.C. § 1001(a)(2). See generally ECF 8. In the plea agreement, Griffith further agreed with the United States on the applicable sentencing guidelines, and agreed, pursuant to the Stipulation of Facts, that an adjusted offense level of 20 applied pursuant to USSG § 2B1.1. Id. at 5. The

United States and Griffith further agreed that the Court and the Probation Office "are not bound by the parties' calculation" of the guidelines and that the parties had no right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range. Id.

The Information filed pursuant to that plea agreement alleged that Griffith participated in a kickback scheme relating to shuttle cars, received $250,000 pursuant to that scheme, and then made a false statement regarding receiving kickbacks, in violation of 18 U.S.C. § 1001(a)(2). See generally ECF 1.

**II. Applicable Law**

The United States respectfully submits that the guidelines as calculated within the plea agreement are correct. The Court may reach the calculations in the plea agreement in a number of ways. As the background note to the USSG § 2B1.1 guideline explains, "a single pattern of offense conduct usually can be prosecuted under several code sections, as a result of which the offense of conviction may be somewhat arbitrary." § 2B1.1 background. The background further explains that the United States Sentencing Commission

> has determined that, ordinarily, the sentences of defendants convicted of federal offenses should reflect the nature and magnitude of the loss caused or intended by their crimes. Accordingly, along with other relevant factors under the guidelines, loss serves as a measure of the seriousness of

> the offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline.

Id.

Furthermore, in light of this background, this memorandum sets forth a variety of approaches in which the Court can reasonably reach the conclusion that the § 2B1.1 loss calculation as contemplated by the plea agreement between Defendant and the United States applies.

First, the loss amounts included in the plea agreement are contained within the offense of conviction – the four corners of the information itself - and the Court need not even consider additional offenses as contemplated by the principles of relevant conduct. Second, the loss amounts are applicable as the kickback scheme is part of the same common scheme or plan as Defendant's false statement, as one cannot have a false statement about participating in kickback schemes without the kickback scheme itself. Third, the object of the false statement was the calculated harm – the retention of the kickbacks. Finally, a cross-reference pursuant to § 2B1.1(c)(3) could return the Court back to the § 2B1.1 guidelines.

    A. **Kickback Scheme and False Statement as Part of Offense of Conviction**

The § 2B1.1 loss guidelines are applicable as the offense conduct – receiving unlawful kickbacks through a kickback

scheme, then lying about the kickbacks in violation of 18 U.S.C. § 1001 - is contained within the language of the information, and is thus the offense of conviction. See USSG § 1B1.2(a).

The Fourth Circuit explained when directing the sentencing court to examine the language of the charging document when determining which offense guideline to use, "The Guidelines require that a sentencing court "[d]etermine the offense guideline section . . . applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." United States v. Boulware, 604 F.3d 832, 835-36 (4th Cir. 2010) (quoting USSG § 1B1.2) (emphasis added).

The charging language of the information - the offense of conviction – charges, essentially, the following: that Griffith participated in a kickback scheme, alongside David Runyon, and received kickbacks from the North American Rebuild Company, Inc. ("NARCO"). Those kickbacks began while Defendant worked as the maintenance manager at Mountain Laurel. Since 2006, Defendant received least $250,000 in illegal kickbacks from an individual at NARCO as part of the Shuttle Car Kickback Scheme. See generally ECF 1. On March 31, 2014, Griffith denied ever receiving kickbacks either personally or on behalf of Runyon, which was not true because Griffith had received kickbacks on numerous occasions. ECF 1 at 2-3.

The § 2B1.1 guidelines specifically include 18 U.S.C. § 1001 as a statutory provision. The charging document, the information, charges that Defendant committed the statutory violation - a false statement about receiving kickbacks – and further includes offense conduct that describes the defendant's participation in the underlying illegal kickback scheme. Here, pursuant to the offense conduct charged, USSG § 2B1.1 applies.

After determining the offense guideline section, the Guidelines next instruct the Court to determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct). See USSG § 1B1.2(b). The relevant conduct factors determining the guideline range include those listed in § 1B1.3(a) and (b). The guideline particularly specifies that relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility of that offense." USSG § 1B1.3(a)(1).

As § 1B1.2 has already defined "offense of conviction" as "offense conduct charged in the count of the . . . information of which the defendant was convicted," the Court need not step further than the four corners of the information to determine that the loss table specified in § 2B1.1 applies pursuant to

5

§ 1B1.3(a). The Information charges the Defendant participated in an unlawful kickback scheme wherein he received approximately $250,000, then made a false statement by denying his receipt of kickbacks – thus these actions are acts of the defendant, occurring during the commission of the offense of conviction, and represent the gain provided to the Defendant during the course of the scheme, which he split with Runyon.

To reach the calculation of gain, the Court must consider § 2B1.1, Application Note 3(B). Under the Guidelines, "loss" is defined as "the greater of actual loss or intended loss." USSG § 2B1.1, app. n. 3(A). "Actual loss" is further defined as "the reasonably foreseeable pecuniary harm that resulted from the offense," which includes "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." § 2B1.1, app. n.3(A)(i) and (iv). When loss exists, but "reasonably cannot be determined," the Court may use gain that resulted from the offense as an alternative measure of loss, which here would be $250,000.[1]

---

[1] In the case of a kickback scheme where employees are receiving illegal kickbacks from vendors, such as the case here, it is often difficult to ascertain an accurate measure of loss to an employer whose employees have been receiving illegal kickbacks. It is the position of the United States that at the very least, Arch Coal and its subsidiary should have received the benefit of the amount of kickbacks paid to Griffith and Runyon in the shuttle car kickback scheme. Here, Defendant and the United States have agreed that there was a loss, which

6

§ 2B1.1, app. n.3(B). Moreover, without Defendant's participation in the kickback scheme, there can be no false statement. Pursuant to the Guidelines, the Court can consider the allegations in the information as the offense of conviction and apply the gain received by Defendant - $250,000 - as part of the loss calculation of the guidelines pursuant to USSG § 2B1.1.

**B. Calculating Loss in § 1001 cases**

Courts have applied the USSG § 2B1.1 guideline in 18 U.S.C. § 1001 cases, and have attributed loss under that guideline. See, e.g., United States v. Killen, 761 F.3d 945, 949 (8th Cir. 2014); United States v. Atwood, 348 F. App'x 827, 832 (3d Cir. 2009). As the Eighth Circuit recently explained, "For crimes involving theft, which can include violations of 18 U.S.C. § 1001(a)(2), the Guidelines provide that a defendant's offense level varies based on the amount of loss involved in the crime. See U.S.S.G. § 2B1.1(b)." Killen, 761 F.3d at 949.

In Killen, the defendant, who received Supplemental Security Income (SSI) benefits from the Social Security Administration (SSA), pled guilty to making a false statement in violation of § 1001(a)(2). Id. at 946. The Killen defendant had falsely claimed she had no bank accounts and failed to report

---

should be calculated by gain pursuant to § 2B1.1, app. n.3(B). See ECF 8 at 5 (agreement on guidelines).

7

certain benefits and income to the SSA. Id. The Eighth Circuit upheld the district court's measurement of loss that attributed the intended loss of how much money the defendant would have received from the SSA until she turned 65, "if her scheme were fully realized." See generally 761 F.3d 945. Thus the loss associated with defendant's false statement was calculated pursuant to the § 2B1.1.[2] Id. at 950. Like the defendant in Killen, who made false statements to prevent the United States from ending her benefits and to retain her SSI funds, unlawfully, Griffith's false statement was made to prevent the United States from determining that he had received unlawful kickbacks, to retain those unlawful funds and to avoid prosecution for receiving such unlawful funds.

Similarly, in United States v. Bolla, 346 F.3d 1148 (D.C. Cir. 2003), the defendant was under investigation by the Securities and Exchange Commission ("SEC") for violating federal securities laws. In anticipation of a settlement agreement with the United States, he filed a sworn financial statement purporting to represent his financial condition and listing certain amounts of cash and goods, but failed to disclose $941,228 in cash and securities, among other things. Id. at 1150. Defendant pled guilty to a charge of 18 U.S.C. § 1001, as

---

[2] The court in Killen did not distinguish whether they included the loss as conduct pursuant to the offense of conviction or as additional relevant conduct. See generally 761 F.3d 945.

8

his statement violated § 1001(a)(2). Id. at 1151. The district court sentenced him in accordance with intended loss, noting that the defendant hid his assets to evade the maximum possible fine he faced in the SEC proceeding, which was $100,000. Id. The Circuit Court upheld the district court, which inferred that the defendant concealed assets to avoid a penalty, and therefore sought to inflict loss on the government. Id. at 1153. Similarly, Griffith's false statement was made also to avoid a penalty – prosecution and the discovery and subsequent loss of the $250,000 in funds that he had unlawfully received at the expense of Arch Coal.

### C. Kickback Scheme is Relevant Conduct as Part of a Common Scheme or Plan

Should the Court reject the United States' argument that the unlawful kickback scheme was part of the charged offense of conviction pursuant to USSG §§ 1B1.2 and 1B1.3, the Court then limits the offense of conviction to the false statement itself. In this case, the Court should determine that unlawful kickback scheme was part of the additional relevant conduct associated with the false statement under the principal that the false statement and the underlying kickback scheme are part of a common scheme or plan.

Relevant conduct principles apply to acts and omissions that are part of a common scheme or plan, or same course of

9

conduct as the offense of conviction, so long as such offenses are of a character for which § 3D1.2(d) apply. See § USSG 1B1.3(a)(1)(2). To be part of the common scheme or plan, for two or more offenses to constitute part of that common scheme or plan, they "must be substantially connected to each other by at least one common factor" such as "common purpose." Id. at n.9(A). Offenses that are not part of a common scheme of plan may qualify as part of the "same course of conduct" if they are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a[n] . . . ongoing series of offenses." Id. at n.9(B) (further explaining that the factors to consider include the degree of similarity between the offenses, the regularity, and the time interval, and noting when one is missing, a stronger presence of at least one other factors is required). Furthermore, pursuant to § 1B1.3, both the § 1001 violation and the kickback scheme would group under § 2B1.1. See § 3D1.2(d).

The false statement provided by Griffith was part of the same course of conduct as the underlying kickback scheme, as the false statement denied his receipt of kickbacks, and Griffith made the statement to cover up his actual participation in the kickback scheme. Thus should the Court limit the consideration of his offense of conviction to the false statement itself, this false statement about kickbacks had a degree of similarity with

10

and was substantially connected to the underlying kickback scheme. Griffith lied about kickbacks to avoid detection, responsibility and prosecution for the kickback scheme in which he participated. Moreover, there could be no false statement regarding kickbacks without his participation in the kickback scheme.

The Fifth Circuit considered relevant conduct in relation to a false statement in United States v. McConnell, 273 F. App'x 351 (5th Cir. 2008). In 2006, a defendant convicted of an unrelated crime in 2004 was transferred to a halfway house to complete his term of imprisonment. Id. at 352. While at the halfway house, he obtained employment at a construction company and then embezzled $80,000. By the time the offense was detected, he had repaid part of the funds, leaving $24,000 unpaid at the time the offense was detected. The defendant was indicted and convicted of making a false statement to a halfway house, where he misrepresented his location on the sign-in/sign-out log. Id. at 352-53. The defendant misrepresented his location on the halfway house's sign-in/sign-out log by stating that he was at work when in reality he was playing blackjack which was paid for by cashing a check from the company from which he embezzled, payable to defendant and dated the same day. Id. at 353. The Fifth Circuit affirmed the district court's determination that defendant's false statement was part of a

common scheme or plan pursuant to USSG § 1B1.3, and included the offense conduct related to the embezzlement. Id. The Fifth Circuit explained that scheme or plan required that the offenses were jointly planned or "that the commission of one would entail the commission of another." Id. at 355 (emphasis added). Here, while Defendant's false statement to the IRS may not have been planned when he participated in the kickback scheme, the commission of the crime of making a false statement denying receiving kickbacks certainly entails the commission of the underlying crime – the kickbacks themselves, as explained in both the Information and the stipulation of facts. One cannot make a false statement denying participation in kickback schemes when one has not participated in such schemes.

Since the offense of conviction and the kickback scheme are relevant conduct, a calculation of the guidelines for those acts and omissions would include all harm that resulted from the acts and omissions. § 1B1.3(a)(3). As loss is difficult to determine in kickback schemes, the parties chose to use gain, pursuant to § 2B1.1 n.3(B).

### D. Relevant Conduct as the Harm that was the Object of Acts and Omissions of Defendant

Furthermore, relevant conduct principals apply to harm that was the object of an act or omission caused by the Defendant. See USSG § 1B1.3(a)(1)(3). Griffith denied receiving kickbacks,

12

when in fact he had received kickbacks. See ECF 1 (Information); ECF 8 at 12-14 (stipulation of facts). By making a false statement about his involvement in kickbacks, Griffith sought to retain his ill-gotten gains and hide his and Runyon's roles in the culture of corruption and the kickback scheme at Mountain Laurel. Thus, retaining his ill-gotten gains and hiding his and Runyon's role in the fraudulent scheme – the harm - was one of the objects of the lie.

**E. Cross Reference in § 2B1.1(c)(3)**

The Court could also use the cross reference in § 2B1.1(c)(3) to apply the loss calculations in § 2B1.1. Pursuant to § 2B1.1(c)(3), if the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two, apply that other guideline.[3] See also United States v. Bryant, 93 F. App'x 573, 574-75 (4th Cir. 2004). Application Note 16 states that this applies in cases where "the defendant is convicted of a general fraud

---

[3] The present case is distinguishable from both the Harold Brown II matter, 2:13-cr-218, previously before this Court, and United States v. Alatrash, 460 F. App'x 487, 492 (6th Cir. 2012). See also Ex. A (Transcript of Brown sentencing) (both applying the USSG § 2B1.1(c)(3) cross reference to § 2J1.2, the further cross reference to § 2X3.1(a) and then back to § 2B1.1, then including the underlying bribes, kickbacks or benefits as part of the relevant conduct when calculating the guidelines for a 18 U.S.C. § 1001 conviction). In both of these cases, the charged conduct was more limited than the case at issue, and involved specific lies that sought to mislead investigators about particular facts of the schemes at issue.

13

statute, and the count of conviction establishes an offense involving fraudulent conduct that is more aptly covered by another guideline." See also United States v. Ochoa, 291 F. App'x 265, 268 (11th Cir. 2008).

The charging language need not specifically list out each element of the related offense for the cross reference to apply. United States v. Bryant, 93 F. App'x 573, 574-75 (4th Cir. 2004) (applying firearms cross-reference to § 1001 conviction); United States v. Ochoa, 291 F. App'x 265, 268 (11th Cir. 2008) (applying § 2J1.2 cross-reference to a § 1001 conviction for obstruction of justice); but see United States v. Genao, 343 F.3d 578, 584 (2d Cir. 2003) (requiring that the cross reference applies "only if the elements of another offense are established by conduct set forth in the count of conviction (and proven by at least a preponderance of the evidence)"; this approach was analyzed and rejected by the Eleventh Circuit in Ochoa). In Bryant, the Fourth Circuit upheld the district court's application of the cross reference in an 18 U.S.C. § 1001 case. Bryant was convicted of violating § 1001 by making a false statement to a federal agent, as alleged in the indictment, "in connection with the investigation of various firearms offenses, including straw purchases and interstate transportation of firearms." Bryant, 93 F. App'x at 574. The introduction of the indictment, Count One, and Count Two all referenced Bryant's

14

involvement with firearm offenses. Id. at 575; see also Exhibit B (Indictment filed in United States v. Bryant, 5:02-cr-215, E.D.N.C. ECF 1) (describing defendant's involvement on attempting to persuade witnesses to purchase firearms on his behalf but not specifically outlining firearms offenses). The district court applied the cross reference to firearms offenses, and the Fourth Circuit affirmed the application of the cross reference. Bryant, 93 F. App'x at 575.

Here, the conduct set forth in the information could be considered to establish a kickback conspiracy, which would be in violation of 18 U.S.C. § 1346 (honest services fraud), although the Information does not specify whether wire fraud or mail fraud was an object of the conspiracy. Should the Court find such conduct was in the Information, such a conspiracy would cross-reference to § 2X1.1, and pursuant to § 2X1.1(c)(1), would cross reference back to § 2B1.1 and the loss table, as presented in the plea agreement, would apply. In Bryant, a false statement related to firearms crimes resulted in a guideline calculated pursuant to the firearms guidelines, and in light of that decision, it is consistent that a false statement related to kickbacks and an alleged and admitted kickback scheme would result in a guidelines calculation related to that scheme.

**III. Conclusion**

For the forgoing reasons, the United States respectfully requests that the Court consider and adopt the loss calculations pursuant to the PSR and the plea agreement.

Respectfully submitted,

R. BOOTH GOODWIN II
United States Attorney

By:
/s/Meredith George Thomas
MEREDITH GEORGE THOMAS
Assistant United States Attorney
WV Bar No.10596
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email:meredith.thomas@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "Memorandum of the United States Regarding the Calculation of the Guidelines" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 17th day of March, 2015, to:

>Thomas J. Gillooly
>P. O. Box 3024
>Charleston, West Virginia 25331

>/s/Meredith George Thomas
>MEREDITH GEORGE THOMAS
>Assistant United States Attorney
>WV Bar No.10596
>300 Virginia Street, East
>Room 4000
>Charleston, WV 25301
>Telephone:  304-345-2200
>Fax:  304-347-5104
>Email:meredith.thomas@usdoj.gov