# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.                                          Case No.   2:14-cr-00118

**GARY K. GRIFFITH,**

      **Defendant**

## DEFENDANT'S MEMORANDUM ON RELEVANT CONDUCT

Defendant, by counsel, submits this memorandum on the relevant conduct issues the Court identified at the hearing conducted on March 10, 2015, as the Court directed from the bench, and in its Order (ECF 24) filed on March 12, 2015.

## INTRODUCTION

The issue raised by the court[1] was triggered by the proposed enhancement of Defendant's recommended guideline range based on the $250,000 he admits he received as part of the Arch Coal kickback scheme described in the plea agreement (in the stipulation of facts).[2] That enhancement adds 12 points to Griffith's 6-point recommended base guideline level, raising it to

---

[1] Defendant Griffith attaches as an exhibit to this pleading the undersigned's March 16, 2015, letter to Assistant United States Attorney Meredith George Thomas. The letter resulted from a discussion between the undersigned and Ms. Thomas regarding possible repercussions if the Defendant were to advocate, in this briefing, a position in conflict with the terms of his plea agreement (ECF 8). *See* attached exhibit.

[2] Griffith split the $250,000 equally with David Runyon, defendant in No. 2:14-cr-00117. The enhanced guideline calculation was agreed to in the plea agreement and is contained in the presentence investigation report.

18 points.[3] At the March 10 hearing, the Court described the probation officer's opinion that the relevant conduct question regarding the dollar-amount enhancement probably raises the same question regarding Griffith's proposed 2-point position-of-trust enhancement. The Court directed the parties to file briefs because it now questions whether the conduct for which the enhancements are proposed is relevant conduct under the Sentencing Guidelines.[4]

In the Memorandum of the United States Regarding the Calculation of the Guidelines (ECF 26), the government describes "a variety of approaches" for the Court to "reasonably reach the conclusion that the . . . loss calculation . . . applies." *Id*. at p. 3. The government's memorandum then presents four such approaches:

> 1. The money Griffith received, on which the § 2B1.1 enhancement is based, is part of the offense of conviction, and therefore the Court need not consider relevant conduct;
>
> 2. The kickback scheme is part of the same "common scheme or plan" as the false statement because there could be not false statement without the kickbacks;[5]
>
> 3. The Defendant's object in making the false statement was to retain the kickback money; or
>
> 4. A § 2B1.1(c)(3) cross-reference "could" lead the Court to apply the § 2B1.1 enhancement.

Government's memorandum at p. 3.

---

[3] USSG § 2B1.1(b)(1)(G).

[4] Defendant Griffith does not question the truth of the facts to which he admitted in his plea agreement. He did not initiate the exploration of the legal issues discussed in this memorandum and submits it only at the Court's direction.

[5] At one point the government seems to argue "same course of conduct" in addition to "common scheme or plan." *See* the discussion in the text.

## DISCUSSION OF THE LAW

### A. The Kickback Scheme is not Part of the Offense of Conviction.

The relevant conduct legal issue the Court has raised principally involves USSG § 1B1.3, which describes relevant conduct. More specifically it involves the clause which follows immediately after subdivision (a)(1)(B) of § 1B1.3. That clause defines relevant conduct as acts or omissions:

> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . .

*Id.*[6]

Under the quoted language, for an act or omission to be relevant conduct under the Guidelines, it must be related in one of the specified ways to "the offense of conviction." The

---

[6] U.S.S.G. § 1B1.3(a)(1), "Relevant Conduct (Factors that Determine the Guideline Range)," reads in its entirety:

**(a) Chapters Two (Offense Conduct) and Three (Adjustments).** Unless otherwise specified, (I) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

**(1)(A)** all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

**(B)** in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense

-3-

offense of conviction in this case is the Defendant's violation of 18 U.S.C. § 1001 (the "false statement" statute), the single statute whose violation the charging instrument in the case alleges. To constitute relevant conduct in this case, therefore, an act or omission must have occurred;

– during the commission of the false-statement crime;

– in preparation for the commission of the false-statement crime; **or**

– in the course of attempting to avoid detection or responsibility for the false-statement crime.

Under § 1B1.3, the base offense level (where more than one is specified), specific offense characteristics, Chapter 2 cross-references, and Chapter 3 adjustments must all be determined on the basis of:

> acts and omissions that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . .

*Id*.

The government has not contended that any acts or omissions involving the kickback scheme occurred during Defendant's violation of the false statement statute, or in preparation for its violation. The government does argue that the Defendant's false statement constituted an attempt "to avoid detection or responsibility," – but for he kickback scheme, not for the offense of conviction (the false statement). For purposes of this case, however, the term "that offense" (in the phrase "attempting to avoid detection or responsibility for *that offense*")[7] refers to the Defendant's March 2014 false statement. Only acts or omissions constituting an attempt to avoid detection or responsibility for the false statement would constitute relevant conduct.

---

[7] Emphasis added.

On the other hand, acts or omissions related to the kickback scheme are not relevant conduct, because the kickback scheme is not the "offense of conviction." *Id*. The government argues to the contrary, contending that the kickback scheme – or at least the dollar amounts stipulated as part of the plea agreement – "are contained within the offense of conviction . . . ." Government's Memorandum (ECF 26, at p. 3).

*Horn's Criminal Jury Instructions for Fourth Circuit*, 2014 ed., specifies the following elements of a false statement charge under 18 U.S.C. § 1001:

> First, that the defendant made a false statement to a governmental agency or concealed a fact from it or submitted a false document;
>
> Second, that the defendant acted knowingly or willfully; and
>
> Third, that the false statement or concealed fact was material to a matter within the jurisdiction of the agency.

*Id.*, Instruction 2.59. False statements (18 U.S.C. § 1001).

Those are the elements, and the only elements, of the charging statute in this case. Language in the charging instrument regarding the fruits of a kickback scheme does not cause the kickback scheme to be "contained within the offense of conviction," in the government's words. The offense of conviction is defined by statute. The function of the charging instrument is to allege facts making out the crime charged. *See* F.R.Crim.P. 7(c). Whatever effect additional language in the instrument may have, such language does not expand the definition or the elements of the "offense of conviction."

Guideline § 1B1.2(a) defines "offense of conviction" as "the offense conduct charged in the count of the indictment or information of which the defendant was convicted." The Guidelines also distinguish between the terms "offense" and "offense of conviction" in a way that

illustrates the meaning of the latter, in § 1B1.1, Application Note 1(H):

> "Offense" means the offense of conviction <u>and</u> all relevant conduct under §1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context.

*Id*. [underscore emphasis added]. The government's memorandum conflates the two terms. But throughout the Sentencing Guidelines they have different meanings.

### B. The Court Decisions Cited in § B of the Government's Memorandum, "Calculating Loss in § 1001 cases," do not Support its Argument.

Section B of the government's memorandum (at p. 7) does not correspond to any of the four "approaches" for application of the loss-amount enhancement listed at p. 3 of its memorandum, and the heading, "Calculating Loss in § 1001 cases" does not elucidate how Section B fits into the government's argument.

Based on the content of Section B, it appears that the government is merely presenting three examples from two non-Fourth-Circuit courts that involve application of the loss-amount provision of § 2B1.1 in cases in which the offense of conviction was the false-statement statute.[8] Although the government's presentation attempts to draw parallels between those decisions and this case, the cited decisions are not properly relied on for that purpose. The reason for this is demonstrated by fn. 2 of the government's memorandum:

> The court in *Killen* did not distinguish whether they [sic] included the loss as conduct pursuant to the offense of conviction or as additional relevant conduct. *See generally* 761 F.3d 945.

*Id*. at p. 8.

In fact none of the cases the government cites in Section B involve a claim that the loss-

---

[8] *U.S. v. Killen*, 761 F.3d 945 (8th Cir. 2014); *U.S. v. Atwood*, 348 F. App'x 827, (3d Cir. 2009) (unpublished); and *U.S. v. Bolla*, 346 F.3d 1148 (D.C. Cir. 2003).

amount enhancement was based on facts that did not constitute relevant conduct. As a result, none of those courts had occasion to discuss § 1B1.3 of the Guidelines, much less the distinction implicitly raised by this Court between the offense of conviction and relevant conduct.

In fact all three of the cited decisions involve disputes about the method used to calculate the loss amount, and not about the propriety of applying a loss enhancement in the first place. The cases are therefore not properly characterized as authority, even as persuasive authority (which is the most the non-Fourth Circuit cases could be in any event). The cases simply do not involve the issue on which this Court called for briefing.

### C. The Government's Argument Fails to Establish that Grouping is Appropriate in this Case, much less that the Case Presents Either a Common Scheme or Plan, or the Same Course of Conduct.

The government argues that, if the Court does not find the kickback scheme to be part of the offense of conviction, it should treat the kickbacks as relevant conduct under the "same course of conduct or common scheme or plan" language of USSG § 1B1.3(a)(2). That subdivision provides that relevant conduct may include:

> solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]

Section 3D1.2(d) provides in relevant part:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule . . . [w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Section 1B1.3(a)(2) therefore requires a two-part analysis, and depending on the result of the first

-7-

part of the analysis, one may not reach the second part.

First, if the kickback scheme and the false statement were multiple counts, would § 3D1.2(d) require that they be grouped and therefore dealt with together?  Only if the answer to that question is "yes" does the analysis proceed to a second step:  do the acts and omissions constitute either the "same course of conduct" or a "common scheme or plan"?  In addition, the two elements in the second step of the analysis are evaluated under separate criteria.

The government's memorandum limits its discussion of the first part of the above analysis to a single, conclusory statement: "Furthermore, pursuant to § 1B1.3, both the § 1001 violation and the kickback scheme would group under § 2B1.1. See § 3D1.2(d)."  Government Memo at p. 10.  The government offers no actual support or analysis for the proposition that §3D1.2(d) "require[s] grouping," although § 1B1.3(a)(2) makes that a precondition for even reaching a common-scheme or same-course-of-conduct analysis.  In other words, the grouping requirement is not an afterthought, to be mentioned in the course of arguing the existence of a common scheme or the same course of conduct.  Instead, the legal analysis cannot even proceed to common scheme or same course of conduct without first establishing that grouping is required.

Despite the government's treatment of the grouping requirement as if it were self-evident, there is nothing obvious about the proposition that §3D1.2(d) requires grouping the offense of conviction with the kickback scheme.  The charging instrument in this case is a single-count information, so there is no additional count that corresponds to the kickback scheme.  Despite that fact, the government's memorandum does not articulate what additional count, that is, what charge, under which federal criminal statute, the kickback scheme would support.

There is no federal criminal kickback statute as such.  The government's failure to specify

a federal criminal statute that it contends must be grouped with the count of conviction is fatal to its common-scheme or same-course-of-conduct analysis. To even reach that analysis the government must get to first base, which is demonstrating that §3D1.2(d) would require the grouping of multiple counts. It is not for the Court to fashion a criminal charge from the kickbacks stipulated to in this case. That is the government's task.

Defendant suggests that the government has not established the necessary basis for the grouping of counts under the Sentencing Guidelines. If the Court agrees, Defendant submits that no inquiry regarding "same course of conduct" and "common scheme or plan" is called for.

>   1. Section 3D1.2 (Grouping) does not support the use of the
>   <u>loss-amount subdivision of § 2B1.1 in this case.</u>

In its memorandum, the government contends that "pursuant to § 1B1.3, both the § 1001 violation and the kickback scheme would group under § 2B1.1. See § 3D1.2(d)." However, the use of the loss-amount subdivision of § 2B1.1 would raise its own problems. The statutory index, of course. designates § 2B1.1 as the applicable guideline for a false statement in violation of § 1001(a)(2) (with an exception not relevant in this case). The title of § 2B1.1 lists:

> – larceny, embezzlement, and other forms of theft;
> – offenses involving stolen property;
> – property damage or destruction;
> – fraud and deceit;
> – forgery; and
> --offenses involving altered or counterfeit instruments other than counterfeit bearer obligations of the United States.

The great majority of the enumerated crimes fit rather obviously into the portion of § 3D1.2(d) which provides:

> Counts involve substantially the same harm . . . [w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm . . . .

However, there is nothing inherent in the elements of § 1001 that suggests "aggregate" or "total" harm. More specifically, nothing inherent in § 1001 involves financial harm.

The other portion of § 3D1.2(d) provides that:

> Counts involve substantially the same harm . . . if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.[9]

"Ongoing" and "continuous" are not characteristics inherent in the crime defined by § 1001. *See* the elements of § 1001 described above. As a result, it does not appear to the Defendant that a "same harm" analysis supports grouping under § 2B1.1 in this case, leaving aside (for purposes of this discussion) the lack of a basis for grouping in the first place.

### 2. The facts of the case do not support a finding of either common scheme or same course of conduct.

The Stipulation of Facts that accompanies the Plea Agreement in the case (ECF 8) establishes the following time frame:

– **2002:** The shuttle car kickback scheme in which Griffith and Runyon were involved began "at least [that is, no later than] sometime around 2002." ECF at p. 13.

– **2008 - 2010:** Defendant Griffith began suffering "some health problems"[10] in 2008. "Sometime around 2010" he was placed on disability.

---

[9] Section 2B1.1 can fairly be described as "written to cover such [ongoing and continuous] behavior," but because ongoing and continuous are not inherent characteristics of the crime described in § 1001, it does not fit the grouping criteria on that basis.

[10] Documentation provided to the probation officer, and described in the Presentence Investigation Report ("PSR") establish that Griffith had undergone heart bypass surgery in 2009. The "health problems" referred to in the fact stipulation were a worsening of his heart disease.

– **2014:** On March 31, 2014, Griffith made the statements to IRS agents that are the basis of his plea in this case.

Some four years, at least, elapsed between Griffith's last active work day at the Mountain Laurel Mine and the offense of conviction in this case. During those four years there is no record of any criminal conduct by Griffith, nor of anything claimed to be relevant conduct.

Application Note 9(B) of U.S.S.G. § 1B1.3 ("Same Course of Conduct") provides that "[ ]*where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity.*" *Id*. [italics in original]. Griffith submits that there is nothing similar about taking kickbacks and making a false statement to federal agents, much less was there anything regular about those events in this case.

Section (A) of Application Note 9, which deals with "common scheme or plan" requires that, for offenses to constitute relevant conduct, "*they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi.*" *Id*.

The government appears to argue that the facts of this case establish a single course of conduct (government memorandum at p. 10 first full paragraph on page), although the memorandum discusses common scheme as well. In addition, the memorandum relies on an unpublished Fifth Circuit case that found a common plan or scheme. Because common scheme and same course of conduct are separate concepts, with differing characteristics, each requires its own analysis. The undersigned is unable to determine whether the government actually relies on same course of conduct, as it seems to on p. 10, or whether it seeks to rely on both.

It may not matter, since the government's analysis supports neither concept. This is clear from the single federal case the government cites to support its argument, *U.S. v. McConnell*, 273 Fed. Appx. 351 (5th Cir. 2008) (unpublished) (a case that found common scheme or plan, not same course of conduct). McConnell was a federal inmate assigned to a community corrections facility in Texas. While there he was employed by a construction company from which he embezzled $80,000. After a state grand jury failed to indict him, he was indicted by a federal grand jury and charged with a violation of 18 U.S.C. § 1001 for

> making false misrepresentations or statements to [the community corrections facility], including misrepresenting his location on [its] sign-in/sign-out log. He pled guilty to one count of the indictment, which charged that . . . he reported . . . that he was at work when in fact he was at a casino for much of the day. McConnell began his play at the black jack table by cashing an $8,000.00 check from [his employer], payable to McConnell <u>and dated that same day</u>.

*Id*. at 355.

The Fifth Circuit upheld the district court's use of the embezzlement as relevant conduct in sentencing the defendant for his violation of the false-statement statute, concluding that both were part of a common plan. McConnell lied about his whereabouts to conceal that he was gambling with money he had embezzled <u>that same day</u>. On the basis of those fully intertwined acts, the Fifth Circuit observed it was evident that the commission of one crime "would entail the commission of the other as well," 273 Fed. Appx. at 355, thus establishing that they were part of a common plan.[11]

The government stretches the term "entail," as the Fifth Circuit used it in *McConnell*, in

---

[11] "As the district court explained: 'How can you find a more seamless web than you file a false statement to go out of the halfway house to go to your employer to get money to go to the casino? That's as seamless as it gets to be.'" *U.S. v. McConnell*, 273 Fed. Appx. at 355.

-12-

an effort to tie Defendant Griffith's false statement to the Mountain Laurel shuttle-car kickback scheme. The acts which took place in the two cases are not equivalent, for several reasons. For one, in *McConnell* the Fifth Circuit said that each crime entailed the commission of the other. The government equates this with its contention that Griffith's false statement entailed (involved) the kickback scheme – but not the other way around, an important distinction. The relationship between the acts discussed in *McConnell* is intimate and works in both directions. In this case, the relationship is remote in time and works only in one direction, looking back from the 2014 false statement.

*McConnell* is presumably as close as the government can come to this case; if the government had better authority, it would certainly have argued it. Its authority is simply unpersuasive as applied to these facts. Indeed its use points up what is lacking on these facts. What is missing is the essence of a common plan that is captured in Application Note 9(B) of § 1B1.3 of the Guidelines, which describes a "spree, or ongoing series of offenses," to convey the meaning of common plan. That essence of common plan is simply not present here.

### D. Section D of the Government's Memorandum.

The Defendant's response to the government's comments in Section D of its memorandum are set forth above in Section C.1 of this memorandum.

### E. Defense Counsel is Unable to Make Sense of the Government's Cross Reference Argument

In the final section of its memorandum, the government asserts that "[t]he Court could also use the cross reference in § 2B1.1(c)(3) to apply the loss calculations in § 2B1.1 [at p. 13]." Counsel cannot make sense of this argument, for following reason.

Subsection (c)(3) of § 2B1.1 states in relevant part:

> If . . . (B) the defendant was convicted under a statute proscribing false . . . statements . . . (e.g., 18 U.S.C. § 1001 . . . ; and (C) the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct), apply that other guideline.

The offense conduct guideline for 18 U.S.C. § 1001 (at least in this case) is § 2B1.1. USSG, Appendix A, at p. 549. Counsel understands the government to be advocating the use of that guideline. Subsection (c)(3) of § 2B1.1, on the other hand, describes a method by which some offense conduct guideline other than § 2B1.1 would be used.

Subsection (c) of § 2B1.1 is a <u>cross</u> reference, that is, a reference that points elsewhere. The government's argument in Section E of its memorandum seems to treat the cross reference as a <u>self</u> reference. In other words, the government seeks to use the cross reference to lead the court back to the same sentencing guideline that the statutory index identifies as the applicable guideline.

For that reason, counsel fails to understand this part of the government's presentation, and counsel does not therefore know how to respond to it. The question here is not which guideline applies to the offense of conviction. The question is whether the kickback money is relevant conduct, such that the dollar loss amounts in the specific offense characteristic described in subsection (b)(1) of § 2B1.1 may appropriately be applied in sentencing this Defendant.

## **CONCLUSION**

For the reason just stated, and for all of the other reasons set forth above, it is defense counsel's opinion that the kickback amounts may not be so used.

The undersigned also agrees with the suggestion of the probation officer who authored

the presentence investigation report in this case that, if the court comes to the same conclusion (that the dollar loss amounts are not relevant conduct), the legal analysis supporting that conclusion would lead to the same conclusion regarding the position-of-trust enhancement, to which the Defendant also agreed in the plea agreement.

Respectfully submitted April 1, 2015.

        **GARY K. GRIFFITH,**
        By Counsel

_____
Thomas J. Gillooly
Attorney at Law
P.O. Box 3024
Charleston, WV 25331
304 546-7228
fax 720-2276
tgillooly@gmail.com
*Counsel for Defendant Griffith*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2015, I filed the foregoing document electronically, using the CM/ECF system, which will send notification of the filing to:

        Meredith George Thomas
        Assistant United States Attorney

_____
Thomas J. Gillooly